United States District Court
for the District of Kansas

TyRon E'lon Wagner, Plaintiff          Case # 25-3247-JWL
        V.
The Kansas Department of Corrections,
Anna Bright (official capacity),
Tyrell Godwin (official capacity),     Civil Rights Complaint
Dalton Kinyun (official capacity),     42 U.S.C § 1983
James Gift (official capacity),
Meghan Davis (official capacity),
Jerry Barton (official capacity),
        Defendants

## A. Jurisdiction

1.) TyRon E'lon Wagner is a citizen of Kansas who currently resides at Lansing Correctional Facility, P.O. Box 2, Lansing, KS 66043.

2.) The Kansas Department of Corrections is a government entity representing the state of Kansas.

3.) The remaining Defendants were each employed by the Kansas Department of Corrections (K.D.O.C) during the events in this complaint, acting under the color of state law.

4.) Jurisdiction is invoked pursuant 28 USC § 1331; 42 USC § 1983.

### B. Nature of the Case

1.) On March 9th, 2025, several members of Lansing Correctional Facility's Special Operations and Response Team directed the Plaintiff to engage in unlawful behavior. As a result of his actions, he was given a disciplinary sanction and required to spend a year in Segregation. During his time in segregation, the Plaintiff suffered egregious injuries due to an unnecessary and excessive use of force.

### C. Supporting Facts

1.) On March 9th, 2025, the Plaintiff, who is an inmate in the custody of the Kansas Department of Corrections, housed at Lansing Correctional Facility (L.C.F), was approached by Anna Bright seeking assistance with an issue she claimed she was having with one of his associates, Michael Parker, who was allegedly harassing her. At the time of this incident, Ms. Bright was an employee of the State of Kansas working on L.C.F's Special Operations and Response Team.

2.) Uncertain of the validity of Ms. Bright's allegation and her subsequent solicitation of an intervention, the Plaintiff immediately spoke with Tyrell Godwin, who at the time of this incident was an employee of the State of Kansas, also working on L.C.F's Special Operations and Response Team. Mr. Godwin verified that the allegations being made by Ms. Bright were indeed factual; he

claimed to have witnessed several instances of this harassment himself.

3.) Tyrell Godwin gave the Plaintiff and several of his associates a directive to "do something" about Mr. Parker, stating that he had "become too disrespectful".

4.) Still apprehensive, the Plaintiff and his associates spoke with Dalton Kinyun about their dilemma; at the time of this incident, Mr. Kinyun was an employee of the state of Kansas, working on L.C.F's Special Operations and Response Team.

5.) Mr. Kinyun ordered the Plaintiff to make certain that Michael Parker "get his ass beat", or he would begin making the lives of Mr. Parker's affiliates difficult. Per K.A.R 44-12-304 Disobeying orders, an inmate is required to follow any order, directive, or instruction given to them by any employee of the facility.

6.) On March 9th, 2025, at 1:23pm, Michael Parker was captured on the facility's Milestone DVR camera system entering his cell, where he remained until 1:49pm; it is alleged that Mr. Parker was assaulted sometime during this 26 minute span, although, there can be no certainty as to what exactly occurred or when, because the incident itself was not captured on camera.

7.) Between 1:23pm and 1:35pm, the Plaintiff and several other inmates entered and exited Mr. Parker's cell multiple times. After 1:35pm, the Plaintiff never returned to Mr. Parker's cell.

8.) Later that evening, the Plaintiff was placed in a Restrictive Housing Unit under the status of Administrative Segregation, while an investigation was being conducted by James Gift, who at the time of this incident, was an employee of the State of Kansas, working at Lansing Correctional Facility as a Special Agent Supervisor.

9.) On March 18th, 2025, the Plaintiff was served with a Disciplinary Report for Battery.

10.) On March 24th, 2025, a Disciplinary Hearing was conducted; no additional evidence was produced. Mr. Gift's allegation was based solely on the Plaintiff being one of several indivisuals who entered and exited Michael Parker's cell during the timeframe when the battery was thought to occur.

11.) During this hearing, Hearing Officer Michael Fare testified that prior to the hearing, two of the other inmates who recieved Disciplinary Reports from this incident had pleaded guilty, attempting to take responsibility for the battery. Mr. Fare contacted James Gift about potentially dismissing the remaining indivisual's Disciplinary Reports. He states the following: "Based on what was told to me by SAS Gift, they are not dropping any of the other DRs just because someone

is pleading guilty to this charge."

12.) When questioned about this conversation, Mr. Gift stated: "I did speak to Fare and I spoke to executive staff and was told we weren't gonna be dropping this."

13.) The Plaintiff was found guilty of Battery and sentenced to 10 days of Disciplinary Segregation, 60 days of restriction, and a $10.00 fine. Upon completion of his sanction, the Plaintiff was notified that he was now considered an "Other Security risk", and he would be required to remain in Segregation for a year.

14.) Anna Bright recieved formal disciplinary action for her involement in this incident; she was demoted. It is unknown at this time whether or not any of the other employees involved faced similar discipline.

15.) On May 7th, 2025, the Plaintiff sought administrative relief by appealing his disciplinary conviction to the Secretary Of Corrections, based on the manner of which this incident was unlawfully manifested and the substantial prejudicial bias that occurred during his disciplinary hearing. (Exhibit A)

16.) The Plaintiff's disciplinary appeal was reviewed by Meghan Davis, who at the time of this incident was an employee of the State of Kansas, working on the Kansas Department of Corrections' Facility Management Team. Ms. Davis found that there was "Substantial compliance with departmental and facility standards

and procedures" and "Hearing Officer's decision was based on some evidence", and yet, her final decision was to "reduce the penalty"; the imposition of the $10⁰⁰ fine was reversed.

17.) On May 16th, 2025, the Plaintiff wrote a letter to K.D.O.C's Central Office addressing his placement in Restrictive Housing as well as the gross misconduct of the staff members involved in this situation.

18.) On June 3rd, 2025, the Plaintiff recieved a facility message from Meghan Davis in which she acknowledges recieving his letter. In her message she writes: "I have forwarded your staff allegations to L.C.F's EAI. There is not much more I can say about that at this time."

19.) On September 12th, 2025, an alarm was signaled at the Plaintiff's cell for an "emergency-medical"; the Plaintiff's cellmate was having serious suicidal thoughts and was requesting to speak with a Behavioral Health Provider.

20.) As Kara Hillis, the Officer in Command of the unit, was attempting to de-escalate the crisis, Jerry Barton aggressively approached the cell, moving Ms. Hillis out of his way. At the time of this incident, Mr. Barton was an employee of the state of Kansas, working on L.C.F's Special Operations and Response Team.

21.) Mr. Barton's conduct was combative as he demanded that

the Plaintiff and his cellmate either "cuff up" or be pepper-sprayed. While attempting to explain to Mr. Barton that his behavior was creating a hostile and volitile environment, a chemical agent was deployed into the cell, incapacitating both the Plaintiff and his cellmate.

22) The Plaintiff's cellmate was immediately placed in handcuffs through the opened trayport in the door. After this, the Plaintiff extended his right arm through the trayport; no attempt was made to place his wrist in mechanical restraints. Instead, Jerry Barton violently slammed the door of the trayport, trapping the Plaintiff's wrist. This action created a deep laceration that required sutures.

23) After closing the trayport, Mr. Barton demanded the Plaintiff's cell door be opened. No video camera was present to document the integrity of this incident, a contradiction of K.D.O.C protocol.

24) Upon hearing the door to his cell opening, the Plaintiff raised his palms and stated, "I'm not resisting". Ignoring his surrender, the responders took the Plaintiff to the ground where his arms and legs were pinned down. At this point, Jerry Barton began to strike him in the face and head with a closed fist. During this assault, the Plaintiff was securely restrained and defenseless.

25) As a result of this attack, the Plaintiff sustained various

injuries including, but not limited to, lacerations above and below his left eye, burst capillaries in his left eye, and several areas of inflammation on his face and head. The severity of his injuries required emergency medical treatment at Saint John Pavillion in Leavenworth, Kansas.

26.) Due to the extensive damage done to the Plaintiff's left eye, his quality of vision has suffered tremendously; he is now required to use prescribed corrective lenses in order to re-gain adequate eye sight. This is an ongoing impairment.

27.) On September 15th, 2025, the Plaintiff filed an Emergency Grievance seeking administrative relief; this Grievance has been returned to him twice with the response "this is not an emergency". The Plaintiff is dissatisfied with this response. (Exhibit B) (Exhibit B)

28.) The entirety of the above listed events have left the Plaintiff emotionally traumatized and permanently injured. To date, these incidents have not been adequately addressed at an administrative level.

### D. Cause of Action

The Plaintiff alleges that several of his Constitutional rights, privileges, or immunities have been violated.

1.) The Kansas Department of Corrections enforces a discriminatory regulation that is substantially prejudicial

to an inmate's Constitutionally protected liberty interests, failing to uphold a standard of equal protection under the law. The Plaintiff suffered cruel and unusual punishment as a direct result of this Administrative Regulation being exploited by several Correctional officers purporting to act in the performance of their official duties. K.D.O.C is therefore liable for damages.

A. The inmate Rule Book is a reprint of the Kansas Administrative Regulations, and it governs K.D.O.C'S inmate population; all residents are required to fully adhere to the rules and regulations therein. Failure to do so results in immediate disciplinary action.

B. K.A.R 44-12-304 Disobeying Orders States; "Each inmate shall promptly and respectfully obey any order, directive, or instruction given to the inmate by any employee of the facility, or by an employee of any other agency or of an organization or firm in charge of the inmate. In case of conflicting orders, the last order shall be obeyed."

C. In it's current language, this particular rule allows State officials to exercise absolute authority, which is an infringement of free will; as it stands, an inmate can be lawfully required to commit unlawful acts, most certainly a

deprivation of their constitutional right to equal protection under the law.

2) The Plaintiff's 8th Amendment right to be free from cruel and unusual punishment was violated when multiple correctional officers instructed him to participate in an unlawful act, then placed him in segregation to punish him for the aforementioned actions.

   A. On March 9th, 2025, Anna Bright, Tyrell Godwin, and Dalton Kinyun were each state officials employed by Lansing Correctional Facility.

   B. During the performance of their official duties, Ms. Bright, Mr. Godwin, and Mr. Kinyun unlawfully conspired to seek retribution on Michael Parker, an inmate who had alleged been harassing Ms. Bright.

   C. Each of these defendants exploited their state appointed authority by engaging in an elaborate entrapment scheme, unduly influencing the Plaintiff and his associates to bring bodily harm to Mr. Parker.

   D. Due to his involvement in this incident, the

Plaintiff was given a year in segregation, where he still remains at the time of this complaint. The Plaintiff has had no other disciplinary infractions during his time in custody.

E. As a result of this incident, the Plaintiff has expirienced emotional trauma and psychological deterioration.

F. This entire situation could not have occured had the defendants not been state officials wielding official powers outside the bounds of their lawful authority; therefore, Anna Bright, Tyrell Godwin, and Dalton Kinyun are each liable for damages.

3.) Failure to provide the Plaintiff with a fair and unbiased disciplinary hearing violated his 14th Amendment right to Due Process.

A. As the primary investigator of this incident, James Gift had prior Knowledge of the illicit influence that initiated this situation, and yet, he withheld this information during the Plaintiff's disciplinary hearing; this intentional omission of potentially exculplatory evidence compromised the integrity of the hearing.

B. Prior to the Plaintiff's hearing, Mr. Gift spoke to Hearing Officer Michael Fare and informed him that he was not to dismiss the Plaintiff's Disciplinary Report, even though 2 of the other indivisuals involved in the incident had already taken responsibility for the battery. As the Reporting Officer, James Gift lacked the lawful authority to deny the dismissal of a Disciplinary Report that he wrote; this created an obvious conflict of interests.

C. By eliminating the Plaintiff from exercising an opportunity to have his Disciplinary Report dismissed, a predetermination of guilt was established; Mr. Gift's actions prevented the Plaintiff from recieving a fair and impartial Disciplinary Hearing.

D. By unduly influencing the results of the Plaintiff's Disciplinary Hearing, James Gift deliberately misused the power he possessed by virtue of state law, an action that was only possible because he was clothed with state authority. Mr. Gift's actions were done while in the performance of his official duties but went well beyond the bounds of his lawful authority.

E. James Gift's intentional abuse of his authority hindered the Plaintiff from utilizing his Constitutional right to Due Process. Therefore, Mr. Gift is liable for damages.

F. The Plaintiff's attempts to seek administrative relief came in the form of his Disciplinary appeal and the letter he wrote to K.D.O.C's Central Office; these documents meticulously detailed the wanton and wicked misconduct of the defendants listed in this Complaint.

G. Both of these documents were received and reviewed by Meghan Davis. An adequate investigation of the Plaintiff's allegations would've discovered that the gross misconduct and collusion of several K.D.O.C employees created substantial prejudice, preventing him from receiving a fair and unbiased Disciplinary Hearing.

H. Ms. Davis had ample opportunity to enforce administrative accountability and grant the Plaintiff relief from the suffering he is enduring as a result of the unlawful actions of multiple K.D.O.C employees. Whether it was negligent or intentional, Meghan Davis failed to act in a manner that would've protected the Plaintiff's Constitutional right to Due Process.

I. Acting in the performance of her official duties, Meghan Davis' actions contributed to the Plaintiff's deprivation of Due Process, making her liable for damages.

4.) On September 12th, 2025, the Plaintiff suffered serious and ongoing injuries as a direct result of an unnecessary and extremely excessive Use of Force; this incident violated his 8th Amendment right to be free from cruel and unusual punishment.

    A. On the above referenced date, Jerry Barton initiated a Use of Force against the Plaintiff that was not necessary; the assault that took place served no purpose.

    B. During this incident, Mr. Barton violated numerous policies and procedures that would've protected the Plaintiff's right to be free from cruel and unusual punishment.

    C. Prior to this incident, Mr. Barton had completed over 300 hours of qualifications training; Mr. Barton deliberately acted in a manner that displayed indifference to the Plaintiff's right to be free from cruel and unusual punishment; by failing to adhere to his training, Jerry Barton purposely acted beyond the limits of his lawful

authority.

D. The extent and severity of the Plaintiff's injuries indicate intentional malice. The Plaintiff was securely restrained and defenseless while Mr. Barton repeatedly struck him in the face with a closed fist, deliberately inflicting pain and injuries. The defendants actions went well beyond what was necessary or acceptable, making his behavior reckless and excessive.

E. During the time of this incident, Jerry Barton was a state official who exercised his official powers outside the limits of his lawful authority. The Plaintiff would not have endured injuries if Mr. Barton had not abused his state appointed authority while purporting to act in the performance of his official duties. Therefore, Mr. Barton is liable for damages.

F. Outside of the battery incident referenced in this complaint, the Plaintiff has had no additional disciplinary infractions during his time in the custody of the Kansas Department of Corrections; he is being held in segregation based soley on his involvement with that incident.

G. The Plaintiff's continued placement in Lansing

Correctional Facility's Restrictive Housing Unit has been unlawfully manifested, the aftermath of the nefarious collusion of several dishonest Correctional Officers, who exploited their State appointed authority to influence unlawful actions. Had he not been in Restrictive Housing, the Plaintiff would not have sustained serious injuries from the excessive Use of Force. Therefore, the indivisuals responsible for his fraudulent detention in Restrictive Housing, Anna Bright, Tyrell Godwin, and Dalton Kinyun, are each liable for damages.

H. The Kansas Department of Corrections enforces a regulation, K.A.R 44-12-304, that fails to protect inmates from being forced to comply with orders that cause them to act unlawfully; had it not been for this substantially prejudical and discriminatory regulation, the Plaintiff could not have been forced to participate in the unlawful actions that resulted in him being placed in Restrictive Housing. Had he not been in Restrictive Housing, the Plaintiff would not have sustained serious injuries from the excessive Use of Force. Therefore, K.D.O.C is liable for damages.

E. Requested Relief

## Injunctive Relief:

1.) The Plaintiff's presence in Lansing Correctional Facility's Restrictive Housing Unit has been unlawfully manifested. To redress this travesty of Justice, the Plaintiff petitions The Court to overturn his disciplinary conviction for Battery and allow him to return to General Population.

2.) The Plaintiff requests for a change to be made to the language of K.A.R 44-12-304 that will explicitly indicate that an inmate has no legal obligation to follow unlawful orders.

3.) The Plaintiff is seeking to initiate an independent investigation into the widespread corruption occuring at Lansing Correctional Facility; he also requests that the defendants in this Complaint be suspended from their official duties, pending the results of this investigation.

## Damages:

1.) Whether intentional or negligent, the defendants' actions have caused the Plaintiff to suffer actual and ongoing injuries, permanently decreasing the quality of his life. He is seeking compensatory damages in the amount of $10,000,000.

2) The Plaintiff continues to endure emotional trauma and mental anguish as a result of the violence, malice,

Systematic oppression, and wicked conduct of the defendants. The Plaintiff is seeking punitive damages in the amount of $10,000,000.

*

I declare, under penalty of perjury, that the facts in this Complaint are true and correct.

TyRon E'lon Wagner

Plaintiff

TyRon Wagner #2000144015
Lansing Correctional Facility
P.O. Box 2
Lansing, KS 66043

Signed: _____
State of: Kansas
County of: Leavenworth
The foregoing instrument was acknowledged before me on this October 20th, 2025 by TyRon Wagner.

Notary Seal: 

Notary Public

18 of 18