**FILED**
**U.S. District Court**
**District of Kansas**

01/23/2026

Clerk, U.S. District Court
By: SND Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**TYRON ELON WAGNER,**

     **Plaintiff,**

     **v.**                      **CASE NO.  25-3247-JWL**

**KANSAS DEPARTMENT OF
CORRECTIONS, et al.,**

     **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff Tyron Elon Wagner is hereby required to show good cause, in writing to the undersigned, why his Claims in Count II should not be dismissed for failure to state a claim.  The Court finds that the proper processing of Plaintiff's claims in Counts I and III cannot be achieved without additional information from appropriate Kansas Department of Corrections ("KDOC") officials.

## I.  Nature of the Matter before the Court

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Plaintiff is incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF").  The Court granted Plaintiff leave to proceed in forma pauperis.  This matter is before the Court for screening Plaintiff's Complaint.  Plaintiff has also filed a Motion to Amend Complaint (Doc. 12) and Motion for Appointment of Counsel (Doc. 13).

Plaintiff alleges in his Complaint that on March 9, 2025, several members of LCF's Special Operations and Response Team ("SORT") directed Plaintiff to engage in unlawful conduct by exploiting a regulation that requires inmates to obey any order, directive, or instruction given to the inmate by any employee of the facility.  (Doc. 9, at 2, 7.)  Plaintiff alleges that as a result of his actions, he received a disciplinary sanction and is required to spend a year in segregation where

1

he has suffered egregious injuries due to an unnecessary use of force. *Id.* at 2.

As Count I, Plaintiff alleges cruel and unusual punishment. *Id.* at 3. Plaintiff was served with a disciplinary report for battery on another inmate. *Id.* Plaintiff alleges that several members of LCF's SORT forced Plaintiff to engage in unlawful conduct by exploiting the regulation. *Id.* at 7. Plaintiff alleges that as the regulation stands, an inmate can be lawfully required to commit unlawful acts. *Id.* at 8.

Plaintiff alleges that on March 9, 2025, Defendant Anna Bright approached Plaintiff and claimed that she needed assistance with an issue she was having with another inmate—Michael Parker. *Id.* at 8. She claimed that Parker had been harassing her in an escalating manner and instructed Plaintiff to address this behavior. *Id.* Because Plaintiff was uncertain of the validity of Bright's allegations and her subsequent solicitation of an intervention, Plaintiff spoke with Defendant Tyrell Godwin about the situation. *Id.* Plaintiff claims that Godwin verified that the allegations were true and gave Plaintiff and several of his associates a directive to "do something" about Parker's actions, as he had become "too disrespectful." *Id.* Plaintiff and his associates then spoke with Defendant Dalton Kinyun about it and Kinyun directly ordered them to make certain that Parker "get[s] his ass beat," or Kinyun would begin making the lives of Parker's affiliates difficult. *Id.* at 8–9.

Plaintiff alleges that K.A.R. 44-12-304 requires inmates to follow any order, directive, or instruction given to them by an employee of the facility. *Id.* at 9. Plaintiff alleges that on March 9, 2025, "it is alleged that Michael Parker was assaulted in his cell." *Id.* Later that evening, Plaintiff was placed in segregation for his suspected involvement in the battery on Parker. *Id.*

Plaintiff alleges that he remains in segregation and that being ordered to bring physical harm to his friend has been a traumatic experience causing him to suffer from nightmares and fear.

2

*Id.* Plaintiff alleges that he has attempted to commit suicide on several occasions. *Id.*

As Count II, Plaintiff alleges a due process violation based on the alleged failure to provide him with a fair and unbiased disciplinary hearing. *Id.* at 3. On March 18, 2025, Plaintiff was served with a disciplinary report ("DR") for battery that was written by Defendant James Gift. *Id.* Plaintiff's disciplinary hearing was held on March 24, 2025. *Id.* at 9. Plaintiff alleges that the only evidence presented was camera footage of several individuals, including Plaintiff, entering Parker's cell "during the timeframe the battery was thought to occur." *Id.*

Plaintiff claims that during the hearing, Hearing Officer Michael Fare[1] testified that prior to the hearing two of the other inmates who received DRs pleaded guilty to the battery. *Id.* at 10. Plaintiff claims that Fare contacted Defendant Gift about dismissing the remaining individual's (Plaintiff's) DR and Gift informed Fare that they are not dropping any of the other DRs just because someone is pleading guilty to the charge. *Id.* Plaintiff claims that this eliminated Plaintiff's possibility of having his DR dismissed, which constituted a "predetermination of guilt." *Id.* Plaintiff was found guilty of battery. *Id.*

Plaintiff claims that Defendant Gift, as the primary investigator of this incident, had prior knowledge of the illicit influence that initiated the entire situation but failed to provide that information during Plaintiff's disciplinary proceedings. *Id.* Plaintiff alleges that this omission of exculpatory evidence compromised the integrity of the disciplinary hearing and unduly influenced the results of the hearing in violation of Plaintiff's due process rights. *Id.* Plaintiff alleges that Defendant Meghan Davis reviewed Plaintiff's disciplinary appeal and had ample opportunity to grant Plaintiff relief. *Id.* at 11.

---

[1] Fare is not named as a defendant.

As Count III, Plaintiff alleges that he was subjected to excessive force on September 12, 2025. *Id*. at 4. Plaintiff alleges that a medical emergency was signaled for Plaintiff's cell due to his cellmate having suicidal thoughts and requesting to speak with a Behavioral Health Provider. *Id*. at 11. Plaintiff claims that as the officer in charge of the unit was attempting to de-escalate the crisis, Defendant Jerry Barton aggressively approached the cell and physically moved the officer away from the cell door. *Id*. Plaintiff claims that Barton's conduct was combative as he demanded that Plaintiff and his cellmate "cuff up" or be pepper-sprayed *Id*. at 11–12. Plaintiff claims that "[w]hile attempting to explain to Mr. Barton that his behavior was creating a hostile and volitive environment, a chemical agent was deployed into the cell, incapacitating both the Plaintiff and his cellmate." *Id*. at 12.

Plaintiff claims that after his cellmate was immediately placed in handcuffs through the opened "trayport" in the door, Plaintiff extended his right arm through the trayport but no attempt was made to place his wrist in restraints. *Id*. Instead, Defendant Barton demanded that the cell door be opened, at which time Plaintiff raised his palms and stated "I'm not resisting." *Id*. Plaintiff claims that Baron ignored Plaintiff's surrender and "responders" slammed Plaintiff to the ground where his arms and legs were pinned down. *Id*. Plaintiff alleges that Barton then began striking Plaintiff in the face and head with a closed fist while Plaintiff was securely restrained and defenseless. *Id*. Plaintiff claims that he sustained injuries, including lacerations above and below his left eye, busted capillaries in his left eye, and inflammation on his face and head. *Id*. Plaintiff alleges that the severity of his injuries required emergency medical treatment at Saint John Pavillion in Leavenworth, Kansas. *Id*. at 12–13. Plaintiff claims that he has an ongoing impairment to the vision in his left eye. *Id*. at 13.

Plaintiff names as defendants:  the KDOC; Jerry Barton, SORT at LCF; Anna Bright, LCF employee; Tyrell Godwin, SORT at LCF; Dalton Kinyun, SORT at LCF; James Gift, LCF employee; and Meghan Davis, KDOC's Facilities and Management Team.  For relief, Plaintiff seeks $10,000,000 in compensatory damages; $10,000,000 in punitive damages; and injunctive relief in the form of an order requiring a change to K.A.R. 44-12-304 indicating that an inmate has no legal obligation to follow unlawful orders.  *Id*. at 5, 13.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)– (2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it

innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Count I:  Cruel and Unusual Punishment

Plaintiff alleges in Count I that he was subjected to cruel and unusual punishment when he was forced by regulation to obey an order to harm a fellow inmate.  Plaintiff alleges that as the regulation stands, an inmate can be required to commit unlawful acts.  Plaintiff alleges that he was disciplined for battery after complying with the order.  The Court finds that the proper processing of Plaintiff's claims in Count I cannot be achieved without additional information from appropriate KDOC officials.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court orders the appropriate KDOC officials of to prepare and file a *Martinez* Report.  Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

### 2. Count II:  Due Process at Disciplinary Proceedings

Plaintiff alleges in Count II that he was denied due process based on the alleged failure to provide him with a fair and unbiased disciplinary hearing.  Plaintiff alleges that he was denied due process at his disciplinary proceedings for battery on another inmate.  Plaintiff acknowledges in his motion to amend that he was not deprived of earned good time credit and his sentence was not otherwise affected by his disciplinary sanctions.  However, he alleges that he was placed in segregation under atypical conditions of confinement.

Plaintiff claims that his DR was not dismissed after two other inmates pleaded guilty, and exculpatory evidence—the order he received from staff—was omitted.  Plaintiff has failed to show

that he was denied due process based on the officials' refusal to automatically dismiss his DR because the other individuals pleaded guilty. Plaintiff claims that this eliminated Plaintiff's possibility of having his DR dismissed, which constituted a predetermination of guilt.  Plaintiff acknowledges that he is on camera entering the victim's cell along with the other inmates.  Plaintiff was provided with his own disciplinary hearing and nothing suggests that the failure to automatically dismiss his DR denied him due process or constituted a predetermination of guilt.

Plaintiff has also failed to show a protected liberty interest.  "The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). This guarantee applies to prison inmates, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Supreme Court has established that protected liberty interests are at issue in the prison setting only when an inmate is subjected to (1) conditions that "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) disciplinary actions that "inevitably affect the duration of his sentence." *Harrison v. Morton*, 490 F. App'x 988, 992 (10th Cir. 2012) (quoting *Sandin*, 515 U.S. at 484, 487).

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose").  "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular

degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)).

Plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard. *Meachum*, 427 U.S. at 224; *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification")). Plaintiff has not shown that his assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Any loss of privileges he has received also fails to create a protected liberty interest. This Court has found that where the duration of a prisoner's sentence is not affected, punishments in the form of privilege restrictions and fines fail to create a protected liberty interest. *See Lewis v. Zmuda*, 2023 WL 8005022, at *10 (D. Kan. Nov. 17, 2023), *aff'd* 2025 WL 1215505 (10th Cir. April 28, 2025) (citing *see Beauclair v. High*, No. 14-3020-SAC, 2015 WL 93636, at *3 (D. Kan. Jan. 7, 2015) (citing *Hornsby v. Jones,* 392 F. App'x 653, 655 (10th Cir. 2010), for the proposition that punishments of fines and segregation for a limited number of days generally fail to implicate a protected liberty interest); *see also Marshall v. Laird*, 2013 WL 3226632, at *3 (D. Kan. June 25, 2013) ("[A] denial of privileges does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life, and consequently no liberty interest is at stake where the

inmate may be sanctioned with a loss of privileges only."); *Blum v. Federal Bureau of Prisons*, 189 F.3d 477, 1999 WL 638232, at *3 (10th Cir. Aug. 23, 1999) (concluding that 90-day disciplinary segregation which left inmate without "store privileges, radio, phone calls, etc." were "such conditions . . . not different in such degree and duration as compared with 'the ordinary incidents of prison life' to be a protected liberty interest under the Due Process clause." (citations omitted))).

This Court in *Lewis* went on to find that Kansas has not created a liberty interest through state regulations.  *Id*. (citing *see Grossman v. Werholtz*, 264 P.3d 1060, 2011 WL 6385650, *3 (Kan. App. 2011) ("[I]n Kansas, even if a statute or regulation mandates that punishment will not occur absent specified substantive predicates, there is no due process violation unless the resulting administrative punishment results in a significant and atypical hardship for the inmate over and above the inmate's underlying sentence." *Ramirez v. State,* 931 P.2d 1265, 1267 (Kan. App. 1997), *rev. denied* 262 Kan. 962 (1997))).

Plaintiff alleges that he was placed in segregation for one year based on his battery conviction.  In his motion to amend, Plaintiff alleges that his status of OSR causes him to lose the ability to gain employment, participate in programs and services, and restricts access to the courts due to no available method of conducting legal research.  Plaintiff alleges that his placement on OSR deprives him of a liberty interest.  Although Plaintiff may receive fewer privileges while housed in segregation, this is insufficient to create a protected liberty interest.  "[R]estrictions on an inmate's telephone use, property possession, visitation and recreation privileges are not different in such degree and duration as compared with the ordinary incidents of prison life to constitute protected liberty interests under the Due Process Clause."  *Requena v. Roberts*, 893 F.3d 1195, 1218 (10th Cir. 2018) (citation omitted).

Plaintiff has not shown an atypical and significant hardship on him in relation to the ordinary incidents of prison life.  Although Plaintiff alleges that he was subjected to excessive force while housed in segregation, that is a separate claim that he has asserted in Count III.

Furthermore, § 1983 is not applicable to "challenges to punishments imposed as a result of prison disciplinary infractions," unless the disciplinary conviction has already been invalidated. *Cardoso v. Calbone*, 490 F.3d 1194, 1199 (10th Cir. 2007).  The Supreme Court has made clear that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)).  This rule applies not only when the prisoner challenges his conviction but also when he challenges punishments imposed as a result of prison disciplinary infractions.  *Balisok*, 520 U.S. at 648.

Plaintiff's claims in Count II are the only claims he alleges against Defendants James Gift and Megan Davis.  Plaintiff should show good cause why his claims in Count II should not be dismissed for failure to state a claim.

### 3. Count III:  Excessive Force

Plaintiff alleges that he was subjected to excessive force by Defendant Barton on September 12, 2025, when Barton punched Plaintiff in the face and head while Plaintiff was restrained.  The Court finds that the proper processing of Plaintiff's claims in Count III cannot be achieved without additional information from appropriate KDOC officials, and is ordering KDOC officials to include Plaintiff's claims in Count III in the *Martinez* Report.

### 4.  Claims against the KDOC and Official Capacity Claims

"A party's capacity to sue or be sued in federal court is determined by state law."  *Sims v. Kansas Dep't of Corr.*, 2019 WL 4450671, at *4 (D. Kan. Sept. 17, 2019) (citation omitted). "Under Kansas law, absent express statutory authority, legislatively-created government agencies lack the capacity to sue or be sued."  *Id*. (citation omitted).  "The KDOC is a legislatively-created government agency, and Kansas law does not permit it to sue or be sued."  *Id*. (citing K.S.A. § 75-5203).    Furthermore, as an agency of the State, the KDOC has absolute immunity under the Eleventh Amendment to a suit for money damages.  *See McGee v. Corizon,* 831 F. App'x 381, (10th Cir. Oct. 14, 2020) (unpublished) ("As to the Kansas Department of Corrections, the Eleventh Amendment bars McGee's claim. It is well-recognized that an action cannot be brought in federal court against a state or its agencies.") (citation omitted); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State, nor its officials acting in their official capacities are 'persons' under § 1983").  Plaintiff's claims against the KDOC are subject to dismissal.  Plaintiff has indicated in his motion to amend that he seeks to dismiss the KDOC as a defendant.  Therefore, the Court dismisses Plaintiff's claims against the KDOC.

In his motion to amend, Plaintiff seeks to clarify that he is suing Defendants in both their individual and official capacities.  The Court notes that an official-capacity suit is another way of pleading an action against the governmental entity itself.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  "The Tenth Circuit has made it clear that where a claimant seeks relief against a KDOC official in his or her official capacity, the party seeks judgment against the KDOC itself, rendering the claim as one against the sovereign."  *Jamerson v. Heimgartner*, No. 5:17-3205-JAR-KGG, 2020 WL 1923074, at *10 (D. Kan. April 21, 2020) (citing *Jones v. Courtney*, 466 F. App'x 696, 699 – 700 (10th Cir. 2012) (collecting cases)).

The Eleventh Amendment therefore applies to any official capacity claims against a KDOC defendant. *Id*. The Eleventh Amendment generally "bars federal suits against state officers in their official capacities for money damages." *Franklin v. Kansas Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005) (unpublished) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)); *see also Staples v. United States*, 762 F. App'x 525, 529 (10th Cir. 2019) (unpublished) (stating that "§ 1983 authorizes official-capacity claims only for injunctive relief and not for damages") (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)). Kansas has not waived the defense of sovereign immunity with regard to § 1983 prisoner claims in federal courts. *Nunez v. Heimgartner*, Case No. 15-3259-EFM-DJW, 2017 WL 2264466, at *5 (D. Kan. May 24, 2017) (citing *Hunter v. Young*, 238 F. App'x 336, 338 (10th Cir. 2007)). "Moreover, the Supreme Court has held that neither states nor state officers sued in their official capacities are 'persons' within the meaning of 42 U.S.C. § 1983." *Franklin*, 160 F. App'x at 734 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Therefore, Plaintiff's claim for money damages against KDOC officials in their official capacity are subject to dismissal.

### 5. Relief

Plaintiff seeks compensatory and punitive damages, and injunctive relief. Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). "The plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted." *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). "The statute limits the remedies

available, regardless of the rights asserted, if the only injuries are mental or emotional." *Id.* (citing *Robinson v. Page,* 170 F.3d 747, 748 (7th Cir.1999)).

The Court found in *Livingston* that the plaintiff's request for compensatory damages was subject to dismissal. *See Livingston v. Unified Gov't of Wyandotte Cty.*, 2023 WL 4560901 (D. Kan. July 17, 2023). The Court found that "[t]he mere fact of detention is not a physical injury." *Id.* at *6.

In ruling on the plaintiff's motion for reconsideration, the Court also cited *Turner v. Schultz*, where the court concluded that § 1997e(e) applied to the plaintiff's malicious prosecution claims in spite of the fact that he did not challenge prison conditions. *Livingston v. Unified Gov't of Wyandotte Cty.*, 2023 WL 5672201, at *3 (D. Kan. Sept. 1, 2023) (citing *Turner v. Schultz*, 130 F. Supp. 2d 1216, 1222–23 (D. Colo. 2001)). In *Turner*, where the plaintiff argued that the prosecution caused him "severe emotional stress and loss of enjoyment of life," the court held that:

> I conclude that § 1997e(e) applies to Mr. Turner's malicious prosecution claims, although he does not challenge prison conditions.
>
> Mr. Turner next argues that the requirements of the PLRA only apply to the suit as a whole, and not to each individual claim. Therefore, because he alleges that he suffered physical injury, he need not show a new injury connected to each individual claim. I again disagree.
>
> The statute does not state whether a separate physical injury must be alleged for each claim for relief, or whether one injury suffices for the entire suit regardless of the number of claims brought. Mr. Turner cited, and I found, no case directly on point. Mr. Turner cites *Marrie v. Nickels*, 70 F.Supp.2d 1252, 1264 (D. Kan. 1999) to support his position that only one injury per case need be pled. In *Marrie*, United States military prisoners sued prison officials for alleged violations of the First, Fifth, and Eighth Amendments arising from living conditions, treatment by prison staff, and disciplinary measures. The Court concluded that one plaintiff's claim for compensatory damages based on alleged retaliation was barred by § 1997e(a), as he did not allege he suffered any physical

injury as a result of the defendants' retaliation. The Court allowed that same plaintiff, however, to seek compensatory and punitive damages for sexual assault claims. The Court held that sexual assault was an adequate "physical injury" for purposes of § 1997e(e). Thus, *Marrie* required that a separate physical injury support each claim. *Marrie,* therefore, does not support Mr. Turner's interpretation of the statute.

*Marrie* is, however, consistent with Congressional intent. The legislative history of the PLRA did not explicitly state Congress's intent in adopting the statute. *See* Karen M. Klotz, Comment, *The Price of Civil Rights: The Prison Litigation Reform Act's Attorney Fee–Cap Provision as a Violation of Equal Protection of the Laws,* 3 Temp.L.Rev. 759 (2000). However, the comments of legislators involved in passage of the Act show an intent to limit the number of prisoner–filed complaints, the number of meritless suits, and the excessive micro–management of the nation's prisons by the federal courts. *See id.;* Sharone Levy, Note, *Balancing Physical Abuse by the System Against Abuse of the System: Defining "Imminent Danger" Within the Prison Litigation Reform Act,* 6 Iowa L.Rev. 361 (2000). It would be contrary to this stated intent to allow a prisoner to bring any number of claims to court on the back of one injury. Because Mr. Turner has failed to show a physical injury in connection with his malicious prosecution claims, I dismiss those claims against Defendants Scott, King, Mooneyham, and Greco.

*Turner*, 130 F. Supp. 2d at 1223–24.

Therefore, Plaintiff must show a physical injury for each claim in order to receive compensatory damages. Although Plaintiff has alleged a physical injury for his claims in Count III, he has not alleged a physical injury for his claims in Counts I and II.

### 6. Motion to Amend Complaint

Plaintiff has filed a motion seeking to amend his Complaint. Plaintiff seeks to remove the KDOC as a defendant and to add Jared Collins as a defendant. (Doc. 12, at 1.) Plaintiff alleges that Collins was the Hearing Officer at Plaintiff's disciplinary hearing and was not an impartial decision maker. *Id*. at 2. Plaintiff also seeks to clarify that he is suing Defendants in both their individual and official capacities. *Id*. Plaintiff states that his disciplinary sanction did not include

the loss of earned good time credit or the imposition of a fine and therefore did not affect the length of his sentence.  *Id*. at 3.  Rather, Plaintiff was placed in Administrative Segregation on "other security risk" ("OSR") for one year due to being found guilty of battery.  *Id*.  Plaintiff alleges that his status of OSR causes him to lose the ability to gain employment, participate in programs and services, and restricts access to the courts due to no available method of conducting legal research.  Plaintiff alleges that his placement on OSR deprives him of a liberty interest.  *Id*. at 3–4.  Plaintiff alleges that his placement on OSR status for one year creates an atypical punishment "because most prisoners are not punished for following the direct orders of staff members, they are punished for NOT following the direct orders of staff members."  *Id*. at 4.

The Court denies Plaintiff's motion to amend.  Plaintiff has not attached a proposed amended complaint as required by the Court's Local Rules.  *See* D. Kan. Rule 15.1(a)(2) ("A party filing a motion to amend . . . must: . . . (2) attach the proposed pleading or other document").  The Court is also dismissing Plaintiff's claims against the KDOC, therefore his request to remove the KDOC as a defendant is moot.  Plaintiff also seeks to add Jared Collins as a defendant based on his role as the Hearing Officer at Plaintiff's disciplinary hearing.  Because the Court has found that Count II is subject to dismissal, Plaintiff's request to add a defendant to this claim would be futile at this time.  If Plaintiff shows good cause why this claim should not be dismissed, the Court may reconsider allowing Plaintiff to add Jared Collins as a defendant.

### 7.  **Motion for Appointment of Counsel**

Plaintiff has filed a motion seeking appointment of counsel.  (Doc. 13).  Plaintiff argues that his imprisonment will greatly limit his ability to effectively litigate, the issues are complex, he has no access to a law library, he has little knowledge of the Federal Rules of Civil Procedure,

counsel would be better able to present evidence and cross-examine witnesses, and Plaintiff is concerned with the safety of his property. *Id*. at 1–2.

The Court has considered Plaintiff's motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). "Rather, a court has discretion to *request* an attorney to represent a litigant who is proceeding in forma pauperis" in a civil case. *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006) (emphasis added) (citing 28 U.S.C. § 1915(e)(1)). In other words, if this motion is granted, it means only that the Court will request that an attorney volunteer to be appointed to represent Plaintiff at no cost to Plaintiff. The Court cannot guarantee that an attorney will volunteer. *See Rachel v. Troutt*, 820 F.3d 390, 396 (10th Cir. 2016) ("Courts are not authorized to appoint counsel in § 1983 cases; instead, courts can only 'request' an attorney to take a case.").

The decision whether to appoint counsel—meaning to request counsel to provide representation at no cost to Plaintiff—in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant appointment of counsel. *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (citing *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (citing *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to request volunteer counsel for Plaintiff, the Court has considered "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115. The Court concludes in this case that (1) it is not clear at this juncture that

17

Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not yet clarified and may not be complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments.  Thus, the Court will deny the motion without prejudice to refiling if this matter survives screening.

### 8.  Initial Partial Filing Fee

On November 14, 2025, the Court entered an Order granting Plaintiff leave to proceed in forma pauperis and assessing an initial partial filing fee of $4.00.  (Doc. 5.)  The initial partial filing fee was due on or before December 15, 2025.  *Id*.  Plaintiff was expressly cautioned that: "Any objection to this order must be filed on or before the date payment is due.  The failure to pay the fee as directed may result in the dismissal of this matter without further notice." *Id.*  In light of delays in KDOC payments, the Court extended the deadline to February 2, 2026.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Appointment of Counsel (Doc. 13) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Complaint (Doc. 12) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **February 2, 2026,** in which to either pay the initial partial filing fee of $4.00 or submit to the Court a written response to this order detailing his efforts to pay the initial partial filing fee.  The failure to comply with this order will result in the dismissal of this matter without further prior notice to Plaintiff.

**IT IS FURTHER ORDERED** that Plaintiff's claims against the KDOC are **dismissed.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **February 23, 2026,** in which to show good cause, in writing to the undersigned, why his claims in Count II should not be dismissed for failure to state a claim.

**IT IS FURTHER ORDERED** that:

(1)    The Court will enter a separate e-service order directing the Clerk of Court to serve Defendants Bright, Godwin, Kinyun, and Barton.

(2)    The KDOC shall submit the *Martinez* Report within **sixty (60) days** following the electronic filing of the Waiver of Service Executed.  Upon the filing of that Report, the Court will screen Plaintiff's Complaint.  If the Complaint survives screening, the Court will enter a separate order setting an answer deadline. Therefore, any answer deadline provided in the docket entry for the waiver of service is not controlling.

(3)    Officials responsible for the operation of LCF are directed to undertake a review of the subject matter of the Complaint:

a.    To ascertain the facts and circumstances;

b.    To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

c.    To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(4)    Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact

Document(s).  The KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(5)    Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included. The KDOC officials shall redact and/or mute audio for any personal identifiers included in  any video or recording submitted.

(6)    Authorization is granted to the KDOC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(7)    No motion or other document addressed to the Complaint shall be filed until the Court has reviewed the *Martinez* Report and entered an order screening the Complaint.

(8)    Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.  Upon the filing of that report, the KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, Defendants, counsel for the KDOC, and the Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

**Dated January 23, 2026, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**